IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02566-MEH

SHURENA LEA TERRELL,

      Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,

      Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff Shurena Lea Terrell appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability and disability insurance benefits ("DIB"), originally filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Jurisdiction is proper under 42 U.S.C. § 405(g). The parties have not requested oral argument, and the Court finds it would not materially assist the Court in its determination of this appeal. After consideration of the parties' briefs and the administrative record, the Court reverses the ALJ's decision and remands the matter to the Commissioner for further consideration.

## BACKGROUND

### I.      Procedural History

Plaintiff seeks judicial review of the Commissioner's decision denying her application for DIB filed on July 1, 2013. [Administrative Record ("AR") 139-140] After the application was

denied on December 3, 2013 [AR 80-82], an Administrative Law Judge ("ALJ") scheduled a hearing upon the Plaintiff's request for March 11, 2015 [AR 111-131], at which Plaintiff was represented by counsel, and the Plaintiff and a vocational expert testified. [AR 37-66] The ALJ issued a written ruling on April 22, 2015 finding Plaintiff was not disabled starting on February 10, 2013 because considering Plaintiff's age, experience, and residual functional capacity, she could perform her past jobs. [AR 16-36] On August 10, 2016, the SSA Appeals Council denied Plaintiff's administrative request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review [AR 1-7]. *See* 20 C.F.R. § 404.981. Plaintiff timely filed her complaint with this Court seeking review of the Commissioner's final decision.

## II.    Plaintiff's Alleged Conditions

Plaintiff was born on August 12, 1980; she was 32 years old when she filed her application for DIB on August 10, 2013. [AR 139] Plaintiff claims she became disabled on February 10, 2013 [*id.*] and reported that she was limited in her ability to work due to a "broke[n] back in three places[;] right arm shattered[;] depression[;] right leg nerve damage[;] and fibromyalgia." [AR 168] Plaintiff filed a "Function Report" in tandem with her application, in which she explained that she has "restrictions from d[octo]r: no lifting over 5 lbs[;] no sitting[,] standing[,] walking[,] lying down 10-15 minutes." [AR 188] She also stated she had difficulty with sleeping, cooking, laundry, money management, and housecleaning, and she got assistance from her mother and daughter with these activities. [AR 189-192]

The record indicates that on September 16, 2011, Plaintiff presented to Pueblo Imaging Center for an x-ray of her lumbar spine; John L. Sherman, M.D. found a "[p]robable old

compression fracture of the T12 vertebral body with anterior wedging and slight kyphosis.[1] The remainder of the lumbar spine is normal." [ECF 235] Records from workers' compensation physician, J. Douglas Bradley, reflect that Plaintiff was being treated for a "lumbar contusion and strain/thoracic strain" after she "slipped and fell on water in [the] restroom" on September 8, 2011, for which Dr. Bradley placed Plaintiff on lifting and work hour restrictions. [AR 334-369] These records indicate Plaintiff's complaints of headaches and back pain from approximately October 2011 through May 2012. [*Id.*] Following an MRI of Plaintiff's lumbar spine on May 7, 2012, Dr. Sherman found "a probable old compression fracture of the superior endplate or T12 with minimal retropulsion, but without traumatic disc herniation, significant stenosis, or cord impingement. There is no evidence of lumbar disc herniation or significant bulging. There is no evidence of nerve root impingement. Mild facet joint arthritis is suspected at the L4-5 level on the right and at the L5-S1 level on the left." [AR 227-228]

Dr. Bradley referred Plaintiff to Roger D. Sung, M.D. at The Spine Center, who she saw on June 6, 2012; Dr. Sung found the fracture had healed, the "mild facet changes" were likely "not part of the problem," Plaintiff was not a candidate for surgery, and he would recommend physical therapy "for several months." [AR 229-230] Plaintiff underwent physical therapy at Excel starting on July 3, 2012, but there were no further records from this facility after August 2, 2012. [AR 236-245] Plaintiff returned to Dr. Bradley, who referred her for chiropractic treatment (8 visits), but the record contains no indication that Plaintiff pursued this treatment. [AR 274-298]

-----

[1]"Kyphosis . . . is an abnormally excessive convex kyphotic curvature of the spine as it occurs in the cervical, thoracic and sacral regions." Kyphosis, https://en.wikipedia.org/wiki/Kyphosis (last visited March 24, 2017).

On September 20, 2012, Plaintiff presented to Excel for a Functional Capacity Evaluation at which Barbara Kelly PT concluded Plaintiff could occasionally walk, sit, stand, and "reach immediate" with her right hand, and she could not tolerate stooping, crouching, kneeling, climbing stairs, and repetitive reaching with both hands. [AR 248-265] On September 25, 2012, Dr. Bradley found Plaintiff to be at maximum medical improvement (MMI) with the following restrictions: lifting, carrying, pushing, and pulling no more than ten pounds; sitting no more than two hours per day; and no crawling, kneeling, squatting, and climbing. [AR 294] On October 25, 2012, Dr. Bradley completed a Permanent Partial Impairment report in which he noted Plaintiff was in a "severe car accident in [sic] 5/7/2006 in which she had a compression fracture at T12, right forearm fracture requiring surgery"; she had been on Oxycodone and Hydrocodone before the September 8, 2011 slip and fall; Plaintiff "rescheduled or no showed for several [physical therapy] visits"; and she complained primarily of "upper and lower back pain with no neck pain." [AR 322-323] Dr. Bradley concluded that Plaintiff was limited to lifting, carrying, pushing, and pulling no more than ten pounds; sitting no more than two hours per day; working no more than four hours per day as a customer service representative; and she was to avoid stooping, kneeling, squatting, climbing, and crouching. [AR 323-324]

More than a year later, on November 30, 2013, Plaintiff presented to Timothy Moser, M.D. for a consultative physical examination. [AR 379-383] Plaintiff reported that she was hospitalized for a week after the car accident in 2006, from which she suffered the T12 compression fracture and right forearm fracture, the latter of which required surgery; she was diagnosed with fibromyalgia in 2010 and had flare-ups two days per week, for which medication provided some relief; she was

able to cook and, occasionally, she washed dishes, swept, mopped, and vacuumed, but did no laundry; and she spent her days "working around the home." [AR 379-380] After a thorough physical examination, Dr. Moser diagnosed Plaintiff with a history of spine fracture, status post arm fracture, and myofascial pain, and found Plaintiff could stand, walk, and sit without limitations; could frequently climb, balance, stoop, kneel, crouch, and crawl, and could occasionally lift and carry fifty pounds and frequently lift and carry twenty-five pounds. [AR 382]

Plaintiff presented to the Pueblo Community Health Center on December 29, 2014 as a new patient; Patricia Bursnall NP examined Plaintiff and assessed her with fibromyalgia, depression, a ligament tear in her knee, and compression fracture of her spine. [AR 395-398] NP Bursnall prescribed medication for the pain ailments and ordered physical therapy for Plaintiff's knee and back. [*Id.*] Plaintiff also met with Sandra Leming for a mental health evaluation; Ms. Leming assessed Plaintiff with posttraumatic stress disorder and major depressive affective disorder, recurrent. [AR 416-422]

### III. Hearing Testimony

At a hearing on March 11, 2015, Plaintiff (who appeared with counsel) and a vocational expert, Denis Duthan, testified. [AR 37-66] Plaintiff testified that she suffered from "a broken back," fibromyalgia, "knee problems," and "a bad right hip"; she was reduced to part-time work after her slip and fall, then left employment in early 2013 after her worker's compensation case settled; she had not attempted to find work since then because her "body was going more downhill"; her fibromyalgia started after the slip and fall; she tore the meniscus in her left knee after slipping down the stairs at her home in 2014; she did her own grocery shopping, washed dishes, and

vacuumed the house; she could drive up to ten minutes at a time; due to her medications, she had

difficulty focusing and experienced fogginess, dizziness, and fatigue; she could walk for twenty

minutes at a time; she could walk a grocery store in 60-90 minutes if she sat down from time to time,

and it took a full day to recover from a grocery trip; for a sedentary position, she would need to get

up and walk around for twenty minutes each hour; she had done "intake" for mental health treatment

and "they [were] setting [her] up for the appointment; and, she felt she could perform a part-time

position, but did not seek employment due to depression and fatigue. [AR 40-60]

The ALJ then turned to the vocational expert, Mr. Duthan, who testified that an individual

with Plaintiff's age, experience and education and the following limitations – full range of light

work, occasional bending, no squatting or kneeling, and no foot or leg controls – could perform

Plaintiff's past jobs of dental assistant, telemarketer, and appointment clerk/receptionist, but not

store clerk or office clerk. [AR 62-63] He also attested that the added limitations of SVP 2 or less

and working only every other day would not be compatible with competitive employment. [AR 63]

Furthermore, if the individual were limited to being off task for twenty minutes each hour, she would

be unable to perform any of the jobs listed above and the limitations would eliminate all work. [AR

64-65]

The ALJ issued an unfavorable decision on April 22, 2015. [AR 16-32]

## LEGAL STANDARDS

To qualify for benefits under sections 216(i) and 223 of the SSA, an individual must meet

the insured status requirements of these sections, be under age 65, file an application for DIB and/or

SSI for a period of disability, and be "disabled" as defined by the SSA. 42 U.S.C. §§ 416(i), 423,

1382.

## I.     SSA's Five-Step Process for Determining Disability

Here, the Court will review the ALJ's application of the five-step sequential evaluation process used to determine whether an adult claimant is "disabled" under Title II of the Social Security Act, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Step One determines whether the claimant is presently engaged in substantial gainful activity.  If she is, disability benefits are denied.  *See* 20 C.F.R. § 404.1520.  Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. § 404.1520(c).  If the claimant is unable to show that her impairment(s) would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits.  *Id.*  Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment.  *See* 20 C.F.R. § 404.1520(d).  If the impairment is not listed, she is not presumed to be conclusively disabled.  Step Four then requires the claimant to show that her impairment(s) and assessed residual functional capacity ("RFC") prevent her from performing work that she has performed in the past.  If the claimant is able to perform her previous work, the claimant is not disabled.  *See* 20 C.F.R. § 404.1520(e), (f).  Finally, if the claimant establishes a *prima facie* case of disability based on the four steps as discussed, the analysis proceeds to Step Five where the

SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. *See* 20 C.F.R. § 404.1520(g).

## II.    Standard of Review

This Court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *see also White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). Thus, the function of the Court's review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970); *see also Bradley v. Califano*, 573 F.2d 28, 31 (10th Cir. 1978).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . However, [a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citations omitted). The Court may not re-weigh the evidence nor substitute its judgment for that of the ALJ. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). However, reversal may be appropriate when the ALJ either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *Hamlin*, 365 F.3d at 1214 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

## ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity since the onset date of her disability, February 10, 2013 (Step One). [AR 21] Further, the ALJ determined that Plaintiff had the following severe impairments: history of compression fracture of the superior endplate of T12 of the thoracic spine; and disorder of the lumbar spine (Step Two). [*Id.*] He found that Plaintiff's listed ailments of a "shattered right arm," "knee problems," and "a bad right hip" did not rise to the level of a "severe" impairment, and the depression and fibromyalgia were not "medically determinable." [AR 22-24] Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [*Id.*]

The ALJ then determined that Plaintiff had the RFC to perform the full exertional range of light work but with the following limitations: occasional bending, no squatting or kneeling, and no foot or leg controls. [AR 25] The ALJ determined the record reflects Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." [AR 26]

The ALJ found that, considering the Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff was capable of performing her past relevant work as a dental assistant, telemarketer, and appointment clerk/receptionist (Step Four). [AR 31] As a result, the ALJ concluded that Plaintiff was not disabled at Step Four of the sequential process and, therefore, was not under a disability as defined by the SSA. [AR 32]

Plaintiff sought review of the ALJ's decision by the Appeals Council on May 19, 2015. [AR 15] On August 10, 2016, the Appeals Council notified Plaintiff that it had determined it had "no reason" under the rules to review the decision and, thus, the ALJ's decision "is the final decision of the Commissioner of Social Security." [AR 1-6] Plaintiff timely filed her Complaint in this matter on October 14, 2016.

## ISSUES ON APPEAL

On appeal, Plaintiff alleges the following errors: (1) whether the ALJ failed in his duty to develop the record regarding Plaintiff's allegations of fibromyalgia; (2) whether the ALJ misunderstood the signs and diagnostic criteria for fibromyalgia and the requirements under SSR 12-2p for establishing it is a medically determinable impairment; (3) whether the ALJ improperly made no findings regarding whether Plaintiff had a medically determinable severe impairment related to chronic pain or myofascial pain; and (4) whether the ALJ's findings at Step Four regarding the functional effects of Plaintiff's pain and the credibility of her allegations related to it are based on substantial evidence.

## ANALYSIS

The Court will address each of the Plaintiff's issues in turn.

## I.    Whether the ALJ Failed to Develop the Record

Plaintiff argues that the record before the ALJ contained enough information to raise questions about the sufficiency of the evidence concerning Plaintiff's fibromyalgia and, thus, the ALJ had a duty to request additional medical records and information from Plaintiff's physician.

"In a social security disability case, the claimant bears the burden to prove her disability."

*Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)).  But because "administrative disability hearings are nonadversarial . . . the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Id.* at 1062-63.  The ALJ's "duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993)).  "The standard for determining whether the ALJ fully developed the record 'is one of reasonable good judgment.'" *Segura v. Barnhart*, 148 F. App'x 707, 710 (10th Cir. 2005) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997)).  If there is sufficient information to make a disability determination, the record is sufficiently developed.  *Cowan*, 552 F.3d at 1187; 20 C.F.R. § 404.1520b.

If a party does not identify the specific evidence the ALJ should have developed, such omission ends the party's duty-to-develop argument. *See Watson v. Barnhart*, 194 F. App'x 526, 530 (10th Cir. 2006) ("Watson neither (1) suggests what the omitted treatment evidence might reveal; nor (2) identifies anything in the record that would have reasonably notified the ALJ that such evidence existed."); *Jaramillo v. Massanari*, 21 F. App'x 792, 795 (10th Cir. 2001) ("She has not identified medical providers from whom records were missing nor did she ask assistance in obtaining any records. On appeal, she has failed to identify the evidence she claims the ALJ should have obtained. The ALJ did not violate the duty to develop the record.").

"Further, the ALJ's duty pertains even if the claimant is represented by counsel." *Wall*, 561 F.3d at 1063.  But, "when the claimant is represented by counsel at the administrative hearing, the

ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Cowan*, 552 F.3d at 1188 (internal quotation marks and citation omitted). "[I]n a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Id.*

Here, the Plaintiff contends that the evidence before the ALJ consisted almost entirely of her worker's compensation records from 2012-2013, for which prescribed treatment was denied and the physician was motivated financially to minimize Plaintiff's chronic pain. According to Plaintiff: "All of this led to the record being inadequate for the ALJ properly to address the question of the disabling effects of [Plaintiff's] fibromyalgia or chronic pain and to give rise to a duty in the ALJ to further develop that record." Opening Brief 19. In addition, Plaintiff contends that, as her chronic pain impairment "is likely dispositive of the claim here," the ALJ should have ordered a consultative examination.

Defendant counters that the ALJ did, in fact, order a consultative examination and he was not required to order a "fibromyalgia specific" examination; the ALJ was entitled to rely on Plaintiff's attorney's representation about the completeness of the record; Plaintiff failed to demonstrate the existence of other medical records supporting her assertion that her impairments caused functional limitations; and, a diagnosis of myofascial pain, alone, does not determine a disability, particularly where the physician who diagnosed it found Plaintiff was capable of medium exertional work.

Plaintiff replies that the ALJ should have developed the record to discern specifically Plaintiff's pain impairment, given the vague diagnoses of "myofascial pain" from Dr. Moser and

"chronic pain syndrome" from Dr. Bradley.

The SSA has declared that fibromyalgia is a "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12–2p, 2012 WL 3104869, at *2 (July 25, 2012). Pursuant to SSR 12–2p, a claimant can establish that he or she has a medically determinable impairment of fibromyalgia if the claimant meets one of two different sets of criteria. *Id.* at *2–3.

The first set of criteria requires the following are met: (1) a "history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted ... for at least 3 months," (2) "[a]t least 11 positive tender points on physical examination ... found bilaterally (on the left and right sides of the body) and both above and below the waist," and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded." *Id.*

The alternative second set requires "all three of the following criteria," including (1) "[a] history of widespread pain," (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome," and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." *Id.* at *3.

First, it is undisputed that during the hearing in this case, Plaintiff's counsel identified no issues requiring further development. *See Cowan*, 552 F.3d at 1188. During counsel's examination

of the Plaintiff, the only questions she asked Plaintiff about her alleged fibromyalgia were when her symptoms started, to which Plaintiff responded that they started after her slip and fall in 2011 [AR 43-44], and whether her fibromyalgia diagnosis concurred with the timing of her depression symptoms, to which Plaintiff responded, "yes." [AR 57-58] The record in this case, which includes medical records before and after Plaintiff's slip and fall, do not mention fibromyalgia until Plaintiff reported to Dr. Moser on November 30, 2013 she had been diagnosed with fibromyalgia in 2010. [AR 379] Dr. Moser did not confirm that diagnosis. [*Id.*] More than a year later, in December 2014, NP Bursnall assessed Plaintiff with fibromyalgia following Plaintiff's report of a previous diagnosis, but there is no indication that NP Bursnall performed an examination by which to confirm the diagnosis. [AR 395-398]

Plaintiff argues that the record contains "vague" diagnoses of "myofascial pain" and "chronic pain syndrome," which should have alerted the ALJ to develop the record for Plaintiff's fibromyalgia. The Court is not convinced that these diagnoses are either vague or even similar to fibromyalgia sufficient to put the ALJ on notice of an omission. "Myofascial pain is pain in muscles or fascia (a type of connective tissue that surrounds muscles). It can occur in distinct, isolated areas of the body." https://en.wikipedia.org/wiki/Myofascial_pain_syndrome (last visited April 5, 2017). "A chronic pain syndrome is the combination of chronic pain [pain lasting longer than six months] and the secondary complications that are making the original pain worse [such as difficulty sleeping and stress]." http://www.instituteforchronicpain.org/understanding-chronic-pain/what-is-chronic-

pain/chronic-pain-syndrome (last visited April 5, 2017)[2]; *see also* Manish K. Singh, M.D., *Chronic Pain Syndrome*, Medscape (January 24, 2017), http://emedicine.medscape.com/article/310834-overview ("CPS can affect patients in various ways," such as "depressed mood, poor-quality or nonrestorative sleep, fatigue, reduced activity and libido, excessive use of drugs and alcohol, dependent behavior, and disability out of proportion with impairment.").  Unlike myofascial pain, fibromyalgia is widespread and can occur not only in muscles, but also in joints, tendons, and other soft tissues.  Unlike chronic pain syndrome, fibromyalgia is indicated by positive tender (pressure) points and/or at least six other symptoms, including not only fatigue, waking unrefreshed, and depression, but also "fibro fog" (difficulty concentrating), anxiety disorder, and irritable bowel syndrome.  *See* SSR 12–2p, 2012 WL 3104869, at *2–3.

As for whether the record contained other information "that would have reasonably notified the ALJ" that evidence might be missing concerning Plaintiff's alleged fibromyalgia, the ALJ reasonably noted that Plaintiff's pain complaints could be related to her injuries [AR 23],[3] and Plaintiff testified at the hearing that the fogginess, dizziness, and fatigue she suffered was caused by the medications she was prescribed (MS Cotin, Oxycodone, and Lyrica) [AR 51].  Moreover, the ALJ was not required to order a consultative examination "solely to determine if [the Plaintiff] ha[d]

---

[2]"Chronic pain causes stressful problems, which, in turn, cause stress that makes the pain worse. This combination of chronic pain and the resultant problems that make pain worse is what we call a chronic pain syndrome."  *Id.*

[3]When asked about her pain during the hearing, Plaintiff testified that the pain in her back, knees, and hip caused grocery shopping to be difficult. [AR 53] She had previously testified that she had a meniscus tear in her left knee from slipping down stairs [AR 44-46], and "a bad right hip" [AR 41].

fibromyalgia in addition to another medically determinable impairment that could account for . . .

her symptoms." SSR 12-2p, 2012 WL 3104869, at *4 (July 25, 2012).

In sum, the Court finds Plaintiff fails to demonstrate a duty on the part of the ALJ to develop

the record further as to Plaintiff's alleged fibromyalgia.

## II.     Whether the ALJ Erred at Step Two

Pursuant to 20 C.F.R. § 404.1520(a)(4)(ii), at the second step of the sequential evaluation

process, an ALJ is required to determine whether an impairment is medically determinable, whether

the impairment may be classified as severe, and whether such impairment meets the duration

requirement of 42 U.S.C. § 423(d)(1)(A), which provides:

> (1) The term "disability" means--
>
> (A) inability to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in death
> or which has lasted or can be expected to last for a continuous period of not less than
> 12 months.

"A physical or mental impairment must be established by medical evidence consisting of

signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms."  20

C.F.R. § 404.1508.  Section 404.1508 provides that a claimant's "impairment must result from

anatomical, physiological, or psychological abnormalities which can be shown by medically

acceptable clinical and laboratory diagnostic techniques."  More specifically, "symptoms" are the

claimant's description of his/her own physical or mental impairments; "signs" are anatomical,

physiological, or psychological abnormalities that can be observed apart from symptom descriptions

and must be shown by medically acceptable clinical diagnostic techniques; and "laboratory findings"

are anatomical, physiological or psychological phenomena that can be shown by use of medically acceptable laboratory diagnostic techniques. 20 C.F.R. § 404.1528.

An ALJ's omission of an impairment altogether could be reversible error. "It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less. ... Further, the failure to consider all of the impairments is reversible error." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) (citations omitted); *see also Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)) ("In his RFC assessment, the ALJ must consider the combined effect of *all* medically determinable impairments, whether severe or not.") (emphasis in original).

## A.    Does the ALJ's "Misunderstanding" of SSR 12-2p Require Remand?

Here, the ALJ did not omit consideration of fibromyalgia; rather, he determined the record "does not support fibromyalgia as a medically determinable impairment." [AR 23] Specifically, the ALJ found:

> The claimant alleged disability due to fibromyalgia. At the hearing, the claimant alleged this problem arose following her worker's compensation claim. Yet, when undergoing a consultative physical exam with Dr. Moser in November 2013, the claimant reported that she was diagnosed with fibromyalgia in 2010, based on symptoms of diffuse body aches and skin sensitivity. On exam, Dr. Moser did not note any specific findings related to fibromyalgia, and did not offer it as a diagnosis (Exhibit 5F). Treatment records related to her worker's compensation claim, stemming from a 2011 work-related injury make no mention of any fibromyalgia (Exhibits 2F; 3F; 4F). The record reflects that, when establishing care at a local clinic, Pueblo Community Health Center, on December 29, 2014, the claimant reported that she had been treated for fibromyalgia and chronic pain from Dr. Rajadas, but he had gone out of business (Exhibit 8F, p. 1). The undersigned notes that, Dr. Rajadas's name is mentioned in the claimant's worker's compensation

17

notes. He is listed as a provider who prescribed the claimant narcotic pain medication, ostensibly for chronic pain from a 2006 motor vehicle accident, but the claimant failed to mention that she was receiving such medication, or had incurred that Tl 2 compression fracture at the time of the accident, and not from the 2011 slip and fall. There is no mention that he was treating her for fibromyalgia (Exhibit 4F). While the provider at that December 2014 visit at Pueblo Community Health Center, Patricia Bursnall, a family nurse practitioner, assessed her with fibromyalgia, and started her on Cymbalta and Lyrica, it is unclear on what bases she reached this diagnosis. She did not examine the claimant for any trigger or tender points (Exhibit 8F). The undersigned notes that, Ms. Bursnall's finding does not support a current diagnosis under the Regulations. It appears this diagnosis was made based on the claimant's reports of a prior diagnosis, with no evidence that, any assessment ever was made to evaluate for trigger points. Ms. Bursnall, as a nurse practitioner, is not an "acceptable medical source," to establish such a diagnosis (20 CFR 404.1513; SSR 06-03p). This also was her first time examining the claimant, and she had no longitudinal relationship with the claimant, and did not have any other records to review to support the claimant's allegations to her. There is no evidence that the claimant ever has been evaluated by a rheumatologist. The undersigned notes that fibromyalgia is a condition that cannot be established through diagnostic testing. The American College of Rheumatology guidelines do specify that there must be widespread pain in a number of painful areas with fatigue, waking unrefreshed, cognitive problems, and other general physical symptoms. Such symptoms should have lasted at least three months at a similar level, and there is no other health problem that would explain the pain and other symptoms (Green-Younger v. Barnhart, 335 F.3d 99, 107 (2nd Cir. 2003), as cited in Moore v. Barnhart, 114 Fed. Appx. 983, (10th Cir. 2004); Social Security Ruling (SSR) 12-2p). The record reflects that other conditions, i.e., her history of compression fracture or lumbar disorder address her reported pain complaints. The record also is devoid of any evidence that the claimant has received a diagnosis of fibromyalgia required under the American College of Rheumatology guidelines and enunciated in SSR 12-2p. Since the record does not provide the appropriate clinical findings, it does not support fibromyalgia as a medically determinable impairment. As such, the undersigned concludes that there is insufficient medical evidence to establish that this condition has been a medically determinable physical impairment, or resulted in more than minimal functional limitations for a period of twelve or more continuous months at any point relevant to this decision.

[AR 22-23] Plaintiff argues the ALJ misunderstood the signs and diagnostic criteria for fibromyalgia and the requirements under SSR 12-2p for establishing it as a medically determinable

impairment. While she concedes that "the lack of a fibromyalgia diagnosis from an acceptable medical source in the record means there is not substantial evidence in the record to support a finding by the ALJ under SSR 12-2p that [Plaintiff] has the medically determinable impairment of fibromyalgia" [Opening Br. 22], Plaintiff contends that the ALJ's "misunderstanding" necessitates "a remand for additional evidence and new findings grounded in a proper understanding of the law and the signs and symptoms of fibromyalgia." [*Id.*]

The Court is not convinced. Any misunderstanding by the ALJ here as to the proper terminology concerning fibromyalgia ("trigger" points vs. "tender" points), or his lack of mentioning the alternative criteria set forth in SSR 12-2p on which a fibromyalgia diagnosis may be based, is insubstantial and beside the point. All parties agree that the record in this case does not support fibromyalgia as a medically determinable impairment. It is the claimant's burden to ensure there is evidence in the record sufficient to establish a reasonable probability that an impairment exists. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). In this case, the only medical evidence of a fibromyalgia diagnosis is from an unacceptable medical source who prescribed Cymbalta and Lyrica to the Plaintiff based solely (it appears) on Plaintiff's report of a previous fibromyalgia diagnosis. [AR 395-397] To require the ALJ in this case to seek "additional evidence" based on the scant record before him would be to "contravene the principle that the ALJ is not required to act as the claimant's advocate in order to meet his duty to develop the record." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) (citation omitted) (commenting, "This is especially true where, as here, neither counsel nor the claimant have obtained (or, so far as we can tell, tried to obtain) for themselves the records about which they now complain—suggesting that counsel has abandoned his

role as advocate in favor of relegating that responsibility to the ALJ.").

Again, Plaintiff's counsel mentioned nothing at the hearing about a lack of evidence concerning Plaintiff's alleged fibromyalgia, and counsel asserted "no objections" to the record before the ALJ. [AR 39] The Court finds the ALJ applied correct legal standards in determining Plaintiff's alleged fibromyalgia was not a medically determinable impairment "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508.

B.     Did the ALJ Err in Making no Findings Concerning Plaintiff's Pain?

Plaintiff argues that the ALJ erred by omitting Plaintiff's pain—described by Dr. Moser as "myofascial pain" and by Dr. Bradley as "chronic pain syndrome"—from consideration at Step Two. The Court agrees. The ALJ makes no mention of the diagnoses of "myofascial pain" [AR 382] and "chronic pain syndrome" [AR 323] in his Step Two analysis. At Step Four, the ALJ notes:

> The undersigned also has paid particularly close attention to the claimant's allegations of pain. Statements about pain or other symptoms will not alone establish disability. There must be medical signs and laboratory findings which show a medical impairment which could reasonably be expected to produce pain or other symptoms alleged and which, when considered with all the other evidence would lead to a conclusion of disability. In evaluating the claimant's pain complaints, the undersigned notes that the record does not support her pain complaints. As previously mentioned, repeated physical examinations have not shown any muscle weakness or atrophy, or any other neurological deficits. Additionally, the objective evidence, by way of imaging, shows only nominal degenerative changes and is not supportive of her reports of pain. None of these findings fully supports her pain complaints, and the undersigned finds her subjective reporting of pain symptoms are not entirely credible.

[AR 29] The ALJ is correct that mere complaints of pain are insufficient to establish a disability. But, even in this conclusion, the ALJ does not mention Plaintiff's diagnoses. Moreover, "[f]inding

plaintiff's allegations not credible would not excuse a failure to consider all alleged impairments at step two." *Elliott v. Astrue*, 507 F. Supp. 2d 1188, 1194 (D. Kan. 2007) (explaining that "symptom-related limitations and restrictions must be considered at [ ] step [two] of the sequential evaluation process, provided that the individual has a medically determinable impairment(s) that could reasonably be expected to produce the symptoms.") (citing SSR 96–3p). Because the ALJ failed to determine whether Plaintiff's diagnosed myofascial pain and/or chronic pain syndrome, which according to Plaintiff caused not only pain, but also fatigue and insomnia [AR 379], were medically determinable impairments at Step Two, "any analysis or findings the court might make in that regard would be mere speculation regarding the ALJ's analysis." *Elliott*, 507 F. Supp. 2d at 1195.

Defendant does not persuade the Court otherwise. Defendant refers only to Plaintiff's subjective pain complaints saying "the treatment records do not demonstrate any symptoms in addition to those related to her lumbar spine impairment," which "the ALJ adequately considered." [Resp. Br. 18] However, as set forth herein, chronic pain syndrome involves not only long-lasting pain, but also "complications" that make the original pain worse (such as difficulty sleeping, fatigue, and stress). Thus, although the ALJ here found at Step Two that Plaintiff had severe impairments of "history of compression fracture" and "disorder of the lumbar spine," he did not consider the combined effect of all of Plaintiff's impairments, potentially including chronic pain syndrome, at later steps in the analysis. *See Parise v. Astrue*, 421 F. App'x 786, 788 (10th Cir. Nov. 30, 2010) (citing *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)).

The record contains a diagnosis of chronic pain syndrome by Dr. Bradley after more than

a year of treatment for Plaintiff's slip and fall [AR 323], and a diagnosis of myofascial pain by the SSA's consulting examiner, Dr. Moser, after seeing Plaintiff only once [AR 382]. *See Gatson v. Bowen*, 838 F.2d 442, 447–48 (10th Cir. 1988) ("objective medical evidence of disabling pain need not consist of concrete physiological data alone but can consist of a medical doctor's clinical assessment as well, where based on "any evidence that an examining doctor can discover and substantiate."). The record also contains Plaintiff's repeated complaints of fatigue and insomnia. [AR 271, 274, 277, 281, 287, 361, 379] Accordingly, the Court finds remand is necessary for the Commissioner to determine whether myofascial pain and/or chronic pain syndrome are medically determinable impairments under the circumstances of this case[4] and, if so, to include those impairments in his consideration and analysis regarding the remaining steps in the sequential evaluation process. *See Elliott*, 507 F. Supp. 2d at 1195; *see also Stubblefield v. Colvin*, No. CIV-13-048-FHS-KEW, 2014 WL 1330750, at *3 (E.D. Okla. Mar. 12, 2014) (finding improper the ALJ's basis for rejecting a diagnosis of chronic pain syndrome (and other mental impairments) and for failing to address the condition as a severe impairment).

## III.    Remaining Issues

The Court "address[es] only so much of Plaintiff's arguments as are sufficient to require reversal." *See Cross v. Colvin*, 25 F. Supp. 3d 1345, 1348 n.1 (D. Colo. 2014). The Court expresses no opinion as to the Plaintiff's remaining arguments, and neither party should take the Court's

---

[4]Chronic pain syndrome has been found to be a medically determinable impairment in other cases in this Circuit. *See, e.g., Marsak v. Astrue*, No. 06-cv-01742-RPM, 2008 WL 2001248, at *1 (D. Colo. May 8, 2008); *Mitchell v. Barnhart*, No. 03-2657-JWL, 2004 WL 1626409, at *2 (D. Kan. July 20, 2004); *Coltharp v. Colvin*, No. 15-CV-0110-CVE, 2016 WL 3166559, at *1 (N.D. Okla. June 6, 2016)

silence as implied approval or disapproval of the arguments. *See Watkins*, 350 F.3d at 1299 ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of the case on remand."). The Court also does not suggest a result that should be reached on remand; rather, the Court encourages the parties, the ALJ, and the Commissioner on remand to consider fully and anew the evidence and all issues raised. *See Kepler v. Chater*, 68 F.3d 387, 391-92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case.") (citation and quotation marks omitted).

## CONCLUSION

In sum, the Court concludes that, at Step Two, the ALJ properly considered Plaintiff's alleged fibromyalgia, but failed to consider the diagnoses of chronic pain syndrome and/or myofascial pain and, thus, the Court cannot determine whether the ALJ considered all impairments at later steps in his analysis as required by SSA regulations and the applicable law. Therefore, the decision of the ALJ that Plaintiff Shurena Lea Terrell was not disabled since February 10, 2013 is REVERSED AND REMANDED to the Commissioner for further consideration in accordance with this order.

Dated at Denver, Colorado this 13th day of April, 2017.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge